The PENNSYLVANIA STATE UNIVERSITY/The PMA Insurance Group, Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (HENSAL), Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2006.
Decided Nov. 17, 2006.

James M. Horne, State College, for petitioners.

Eric P. Betzner, Washington, for respondent.

Andrew E. Greenberg, Norristown, for amicus curiae, Pennsylvania Defense Institute.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

This case involves a public employer's reconsidered request for a pension offset against workers' compensation benefits. We are concerned with how an employer proves the extent to which it funded a defined benefit pension plan so as to qualify for the offset. More particularly, must an employer offer evidence of specific past amounts paid by the employer to the plan on account of an employee, or may the employer offer actuarial opinion of its past and future funding to the plan? The issue is of considerable importance because most public employees in Pennsylvania are members of a defined benefit pension plan.

Here, the Pennsylvania State University and PMA Insurance Group (collectively, Employer) petition for review of an order denying their petition to modify benefits, setting aside their notice of workers' compensation benefit offset and reinstating Robert Hensal's (Claimant) workers' compensation benefits.[1] Concluding Employer's proof is permissible, we vacate and remand for further proceedings.

Claimant sustained a work injury in the nature of a shoulder sprain/strain on February 21, 2002. Employer promptly issued a notice of compensation payable awarding Claimant total disability benefits. In late October 2002, the State Employees' Retirement System (SERS) granted Claimant a disability pension.

In January 2004, Employer filed a petition to modify benefits alleging entitlement to an offset against its workers' compensation obligation due to Claimant's receipt of a disability pension. Employer later issued Claimant a notice of workers' compensation benefit offset pursuant to Section 204(a) of the Workers' Compensation Act (Act).[2] Employer's notice indicated Claimant's entire workers' compensation award was subject to an ongoing offset. Asserting Employer's action violated the Act, Claimant filed a penalty petition.

Employer presented the testimony of SERS' Director of Benefits Determination Division and SERS' actuary. Reviewing their testimony, which is discussed later in

1. The Commonwealth of Pennsylvania, the State Employees' Retirement System, the Public School Employees' Retirement System and the Pennsylvania Defense Institute appear as amici curiae in support of Employer. The Pennsylvania Trial Lawyers Association appears as amicus curiae in support of Claimant.

2. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 71.

this opinion, the Workers' Compensation Judge (WCJ) concluded Employer bore the burden of proof but failed to establish its contributions to Claimant's pension. Notably, the WCJ acknowledged Employer's evidence may be valid, but concluded the law requires actual contributions be proven before offset is permitted. Of further significance, the WCJ did not make credibility determinations on the witnesses' testimony.[3] The WCJ denied Claimant's penalty petition.

On Employer's appeal, the Workers' Compensation Appeal Board (Board) affirmed. Initially, we affirmed the Board's determination. We subsequently granted Employer's application for reconsideration and again review whether the WCJ improperly denied Employer an offset. Both the WCJ and the Board resolved the issue as a matter of law. Accordingly, we examine the applicable statutory and regulatory language and Employer's evidence.[4]

## I. Statutory Provisions

There are two legislative acts that impact Claimant's receipt of benefits: the Act and the State Employees' Retirement Code (Retirement Code), 71 Pa.C.S. §§ 5101–5956. In addition, the Bureau of Workers' Compensation (Bureau) promulgated regulations addressing the offset of workers' compensation benefits where an injured employee also receives pension benefits. *See* 34 Pa.Code §§ 123.2–123.10.

### A.

First, we review the applicable section of the Act. In 1996, the legislature, attempting to combat the increasing costs of workers' compensation in Pennsylvania, amended Section 204(a) of the Act to allow employers an offset against workers' compensation benefits for social security, severance, and pension benefits simultaneously received by an employee. *Kramer v. Workers' Comp. Appeal Bd. (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518 (2005). The amended Section 204(a) now provides, in relevant part:

> The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation* which are received by an employee *shall also be credited against the amount of the award* made under sections 108 [occupational disease] and 306 [total and partial disability], except for benefits payable under section 306(c) [specific loss benefits]....

77 P.S. § 71 (emphasis added). Amended Section 204(a) serves the legislative intent of reducing the cost of workers' compensation by allowing an employer to avoid pay-

---

**3.** The WCJ concluded:

> An [e]mployer is entitled to an offset only for its contributions and actual interest thereon. [*Pittsburgh Bd. of Educ. v. Workers' Comp. Appeal Bd. (Schulz)*, 840 A.2d 1078 (Pa.Cmwlth.2004)]. The testimony of Linda Miller and Brent Mowrey did not establish what [Employer] contributed. Accordingly, [Employer] has failed to meet its burden to establish that it is entitled to a benefit offset for SERS benefits.
>
> [Employer's] argument that [its] calculation is equitable because presently [Employer's] contributions are artificially low and in the future [Employer's] contributions

will be artificially high may be valid. However, the regulations and the [*Schulz*] case ... indicate it is the net amount contributed by [Employer] and received by [Claimant] that must be established under current law. WCJ's 11/30/2004 Decision, Conclusion of Law No. 1.

**4.** We are limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Selkow v. Workmen's Comp. Appeal Bd. (Anchor Davis–Jay Box Co.)*, 662 A.2d 31 (Pa.Cmwlth.1995).

ing duplicate benefits for the same loss of earnings. *Kramer; Murphy v. Workers' Comp. Appeal Bd. (City of Phila.),* 871 A.2d 312 (Pa.Cmwlth.2005). Similarly, Section 204(a) implicitly recognizes that public policy bars an employer from utilizing an employee's own retirement funds to satisfy its workers' compensation obligation. *See Lyons v. Workmen's Comp. Appeal Bd. & City of Los Angeles,* 44 Cal.App.3d 1007, 119 Cal.Rptr. 159 (1975) (labor code prohibited employer from receiving either directly or indirectly contributions from employees to cover cost of workers' compensation). Central to this appeal is the legislature's failure to specify the method of calculating the offset or proving the extent to which the employer funded the pension at issue.

## B.

The change in legislation required the Bureau to adopt regulations addressing the various offsets now authorized under Section 204(a). Section 123.8 applies the Act's offset provision to defined benefit and defined contribution pension plans. 34 Pa.Code § 123.8(b). Among other things, the regulations require an employer to inform the employee how it calculated the offset. 34 Pa.Code § 123.4(b). The regulations further provide the offset calculation for multi-employer pension plans but not for multiple employer plans.[5] To calculate multi-employer pension fund offsets, the regulations require that the portion of the annuity purchased by the liable employer's contributions be determined by the pension fund's actuary. 34 Pa.Code § 123.10(b).[6]

## C.

Calculation of an employer's offset necessarily entails a limited examination of the pension plan at issue. In this case, Claimant is a member of SERS, which provides a defined benefit pension plan. A "defined benefit plan" is one where the "benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employe[e]'s retirement." 34 Pa.Code § 123.2. As a participant of a defined benefit plan, Claimant is guaranteed a fixed monthly benefit.[7]

Benefits paid to SERS' members are governed by the Retirement Code. It mandates that both employees and employers contribute to the pension fund. 71 Pa.C.S. §§ 5501; 5507. Moreover, Employer, as a state-affiliated university, is "totally re-

---

**5.** A multi-employer pension plan is one to which "more than one employer is required to contribute and is maintained under one or more collective bargaining agreements between one or more employe[e] organizations and more than one employer." 34 Pa.Code § 123.2. Although not defined, a multiple employer pension plan is maintained by one or more employers where participation is not linked to a collective bargaining agreement. Reproduced Record (R.R.) at 110a. SERS is a multiple employer pension plan.

**6.** The regulation continues as follows: "The ratio of the portion of the annuity purchased by the liable employer's contributions to the total annuity shall be multiplied by the net benefit received by the employee from the pension fund on a weekly basis. The result is the amount of the offset to be applied to the workers' compensation benefit on a weekly basis." 34 Pa.Code § 123.10(b). Additional regulations explain how the offset shall be calculated where the pension benefit is received monthly or in a lump sum. 34 Pa. Code §§ 123.10(c), (d).

**7.** In contrast, in a defined contribution plan, the employee and in some cases the employer contribute specified sums to an individual account on behalf of the employee. *DeMarco v. DeMarco,* 787 A.2d 1072 (Pa.Super.2001). Benefits are calculated solely on the accumulated contributions and earnings in the employee's account. *Id.;* 34 Pa.Code § 123.2.

sponsible for all employer contributions under section 5507 (relating to contributions by the Commonwealth and other employers)." 71 Pa.C.S. § 5102. Thus, the pension fund is supported by employee and employer contributions, and investment income.

The employer contribution rates are governed by Section 5508, which generally provides that an employer's total contribution rate consists of its normal contribution rate, the accrued liability contribution rate, and an experience adjustment factor. 71 Pa.C.S. § 5508.[8] An employer's total contribution rate is expressed as a percentage of its active payroll based on actuarially projected calculations. *Id.* As an important consequence, an employer does not make contributions on behalf of an individual employee. Rather, an employer is required to contribute to the fund to maintain its overall solvency and to ensure sufficient monies are available to pay its projected liability.

## II. Employer's Evidence

Before the WCJ, Employer offered the testimony of Linda Miller, SERS' Director of Benefits Determination Division (Director). Director testified SERS offers a defined benefit pension plan, and that an employee's monthly benefit is not based on past contributions by either the employer or employee. Rather, an employee's pension benefit is determined in part by the employee's years of service, final average salary, projected investment returns, and mortality projection. Importantly, Director confirmed Claimant and Employer contributed to the fund.

Of additional significance, Director stated that under a defined benefit plan, the extent to which an employer funded a particular employee's pension can only be determined by an actuarial formula. The formula subtracts from the total value of the employee's actuarially determined projected lifetime benefit the specific amount the employee contributed, plus an actuarially determined investment rate of return. The resulting figure represents an actuarially accurate portion of future pension benefits which the employee did not fund.[9]

Employer also presented the testimony of Brent Mowrey, SERS' actuary (Actu-

---

8. An employer's normal contribution rate is expressed as a percentage of compensation of an average new active member, which if contributed throughout the member's active service, would be sufficient to fund the liability for any prospective benefit payable to that member. 71 Pa.C.S. § 5508(b). The accrued liability contribution rate is computed as the rate of total compensation of all active members sufficient to fund benefits over a specified period of years. 71 Pa.C.S. § 5508(c). The experience adjustment factor allows an increase or decrease in the unfunded liability based on actuarial recommendations. 71 Pa.C.S. § 5508(f).

9. Director testified that to establish the extent to which Employer funded Claimant's pension for offset purposes, SERS first determined the pension's present value. To compute the present value, SERS calculated Claimant's maximum single life annuity, or monthly benefit ($1,194.75). The maximum single life annuity equals 2% times the member's years of service times final average salary times the class multiplier (2% × years of service × final average salary × class multiplier). 71 P.S. § 5702; R.R. 47a. SERS then multiplied the single life annuity by 12 to ascertain Claimant's yearly benefit ($1,194.75 × 12 = $14,337). R.R. 47a–48a. The yearly benefit multiplied by the applicable annuity factor yielded the present value ($14,337 × 10.13600 = $145,319.83). *Id.* at 48a.

Thereafter, SERS subtracted Claimant's contributions and investment growth at 8.5% from the present value. The difference represents Employer's funding obligation ($145,319.83—63,271.99 = $82,047.84). *Id.* at 49a. Employer's total obligation, when divided by the annuity factor, yielded Employer's yearly obligation ($8,094.69). *Id.* On a monthly basis, Employer funds Claimant's pension in the amount of $674.56. *Id.*

ary). Actuary stated his firm makes yearly recommendations regarding member employers' contributions to the fund. R.R. 93a. The recommendations are based on various actuarial assumptions, which are examined every five years. *Id.* The assumptions include considerations such as investment return rate, salary growth, economic forces, mortality rates, and fund past performance. *Id.* at 94a–96a. Based on Actuary's recommendations, which include consideration of the above-noted factors, SERS assigns 8.5% interest to employee contributions. *Id.* at 112a–13a.

Actuary stated that although employers do not make contributions to the fund on behalf of individual employees, employers make contributions for particular classes of employees. *Id.* at 129a–30a; 141a. Additionally, SERS informs employers of their contributions to the fund expressed as a percentage of their payroll, again based on Actuary's recommendations. *Id.* at 94a. Actuary acknowledged that in some years employers' contributions were 0% of their payroll; however, because employees continued to accrue additional pension rights by virtue of continued employment, employers remain obligated to fund the newly earned benefits. *Id.* at 149a. Thus, Actuary concluded employer contributions to the fund in any given year are irrelevant to calculating an offset because *past* or *future* employer contributions maintain adequate funding. *Id.* at 150a (emphasis added). Finally, Actuary confirmed SERS' method of calculating an employer offset is reasonable and actuarially sound. *Id.* at 105a; 125a.

Director's and Actuary's unrebutted testimony established several points. First, Employer is statutorily required to contribute a percentage of its payroll to the pension fund to cover the difference between employee contributions and pension liability, including liability to Claimant. Second, and of particular importance here, the extent to which an employer will fund a particular employee's pension can only be determined by an actuarial formula. Third, Employer did not make identifiable contributions to the fund solely on Claimant's behalf. Fourth, Employer made past contributions and will make future contributions to the pension plan while Claimant receives his lifetime benefit.

### III. Contentions

Briefly stated, Employer argues the WCJ and Board failed to recognize that in a defined benefit plan an employer does not contribute monies on behalf of an individual employee. The WCJ's and the Board's interpretation of Section 204(a), Employer suggests, fails to appreciate statutory language that an employer is entitled to an offset to the extent it "funded" the pension at issue. Employer further contends the WCJ's and Board's decisions are contrary to the Act because they effectively deny nearly all state agencies offsets against their workers' compensation obligations.

Conversely, Claimant argues the WCJ properly rejected Employer's speculative evidence where proof of Employer's actual contributions on behalf of individual members is known but was not produced.[10]

---

10. Claimant further contends regulations permitting a unilateral imposition of offset are contrary to the Act and violate his right to due process under the Pennsylvania Constitution, although he fails to identify any specific constitutional provision or offensive regulation.

We decline to address Claimant's undeveloped assertions. These assertions relate to Claimant's penalty petition, which was denied by the WCJ. Claimant did not appeal from either the WCJ or the Board; accordingly, this issue is not preserved for appellate review.

## IV. Discussion

Most recently, in *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343 (Pa.Cmwlth.2005), we discussed an employer's burden in a defined benefit pension offset case. In *King*, Director also testified on behalf of the employer, and she provided nearly identical testimony regarding the employer's method of calculating the offset. However, no actuary testified. The WCJ found Director's testimony failed to establish employer paid any funds into the pension system. On appeal, this Court affirmed the denial of an offset, noting the employer failed to establish it funded the pension plan, and failed to explain how the interest rate or other actuarial calculations were derived. Notwithstanding, and with some significance, we stated "[t]here was no determination made that [the employer] could not determine contributions by way of actuary tables." *Id.* at 347.

The Board interprets *King* to hold an employer is only entitled to an offset where it establishes the specific dollar amount it contributed in the past to Claimant's pension. This determination is erroneous, for several reasons.

### A.

First, *King* is factually distinguishable from this case. In *King*, there was no testimony from an actuary. Here, that testimony is present. Also, in *King* there was no testimony the employer funded the plan. Here, that testimony is present. Even a cursory reading of *King* reveals it was intended to apply to the record, or lack of record, in that case only. Consequently, we conclude *King* does not control the outcome here.

### B.

Second, the Board's restrictive interpretation fails to apprehend the core differences between defined benefit and defined contribution pension plans. These core differences impact the manner of proving the extent to which an employer funds an employee's defined benefit pension.

As previously noted, a defined contribution plan is an individualized retirement account funded by employer and employee contributions before retirement, as well as investment returns. 34 Pa.Code § 123.2. The monthly pension benefit is dependent on the contributions and on the performance of the investment portfolio. *Id.* Because the account is individualized, employer contributions to the employee's pension are easily ascertained.

In contrast, a defined benefit pension plan is designed to provide an employee with a set benefit amount based on factors known only at retirement, such as length of employment and retirement age. *See* Edward A. Zelinsky, *The Defined Contribution Paradigm*, 114 Yale L.J. 451 (2004). In this case, the defined benefit is based on the length of employment, retirement age, membership class and final average salary. *Id.;* 71 Pa.C.S. § 5702. Unlike the defined contribution situation, in a defined benefit plan an employee's actual contributions do not determine the amount of monthly benefits a member will receive.

An employer is required to contribute funds to the defined benefit pension plan to cover the difference in employee contributions and the collective pension liability. *The Defined Contribution Paradigm;* 71 Pa.C.S. § 5508. An employer's liability to fund an employee's defined benefit pension is not complete until the employee dies. *See The Defined Contribution Paradigm.* So, here, Employer is subject to potential post-retirement funding pursuant to an accrued liability contribution rate and to an

actuarially determined experience adjustment factor to address unfunded liability. 71 Pa.C.S. §§ 5508(c), (f). Because the pension guarantees a fixed benefit level, the employer assumes the risks of investment, inadequate funding, and member longevity. *The Defined Contribution Paradigm*.

Further, defined benefit plans are funded collectively, the employer's contributions being pooled in a common trust fund from which all participants receive their benefits. *Id.* In theory, economies of scale and other efficiencies are achieved by investing in a single common pool. *Id.* Also, longevity risk is tempered by a larger and more diverse pool of participants. *Id.* Indeed, the SERS defined benefit pension here reflects collective or class funding by Employer, rather than the individualized retirement account of a defined contribution plan.

In sum, collective funding and the potential for post-retirement funding create unique hurdles to proving an employer's defined benefit contribution for pension offset purposes. Because an appreciation of the funding of defined benefit pension plans requires knowledge beyond that possessed by laypersons, it is a subject particularly amenable to testimony by experts. *See* Pa. R.E. 702. This approach is consistent with common sense and with testimony that the extent to which an employer funded a particular employee's defined benefit pension can only be determined by an actuarial formula. The approach is also consistent with the regulation for evaluation of offset for multi-employer plans, which requires that the portion of the annuity purchased by the liable employer be

determined by the pension fund's actuary. 34 Pa.Code § 123.10(b).

## C.

Third, contrary to the Board's holding, the Act requires an employer to prove the extent to which it funded the pension at issue; it does not require proof of actual contributions. 77 P.S. § 71. The Board's narrow reading of *King* effectively denies defined benefit employers offsets because they cannot meet their burden of production of contributions to a particular pension account. We cannot sanction the Board's limited interpretation in light of the clear legislative intent to provide employers relief from concurrent payment of workers' compensation and employer-funded pension benefits. *Kramer; see also* 1 Pa.C.S. § 1922(a) (General Assembly does not intend a result that is absurd, impossible of execution or unreasonable); *Branch v. Cohen,* 736 A.2d 732 (Pa.Cmwlth.1999).

## D.

Since an employer cannot provide evidence of actual contributions for the use of an individual member of a defined benefit pension plan, it may meet its burden of proof, as Employer attempted in this case, with expert actuarial testimony. Employer's expert evidence here, if accepted as credible, is legally sufficient to establish the extent to which Employer funded Claimant's defined benefit pension for purposes of offset. In this regard, we discern no merit in Claimant's argument that Employer's evidence is impermissibly speculative.[11] *Cf. Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991) (expert testi-

---

**11.** The approach discussed by the Board (a formula based on an employer's past contributions to the pension fund during a member's years of service) fails to consider post-retirement funding (accrued liability contribution rate and an actuarially determined expe-

rience adjustment factor to address unfunded liability, 71 Pa.C.S. §§ 5508(c), (f)). Therefore, it is a less accurate indication of a public employer's ultimate funding responsibility than that described by Actuary here.

mony regarding loss of future earnings not speculative); *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980) (inherently speculative nature of lost future earnings does not justify excluding reliable economic evidence); *Gary v. Mankamyer,* 485 Pa. 525, 403 A.2d 87 (1979) (testimony of actuary admissible to show loss of earning capacity); *Burkett v. George,* 118 Pa. Cmwlth. 543, 545 A.2d 985 (1988) (testimony of actuary). This conclusion is consistent with innumerable court decisions involving the analogous law of civil damages, which hold that damages are considered speculative only if there is uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount or value of damages. *E.g., Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027 (1998); *Carroll by Burbank v. Phila. Housing Auth.,* 168 Pa.Cmwlth. 275, 650 A.2d 1097 (Pa.Cmwlth.1994) (damages are speculative if uncertainty concerns fact of damages, not amount).

## IV. Conclusion

The WCJ here failed to make credibility determinations on Employer's evidence. Although he recognized Employer's evidence may be valid, the WCJ (and later the Board) erroneously concluded Employer was required to prove net contributions before an offset will be permitted. Because Employer's evidence, if credited, is sufficient to meet its burden of proof, we vacate the Board's order and remand, with direction that the case be further remanded to a WCJ for additional findings based on the existing record.

### ORDER

AND NOW, this 17th day of November, 2006, the order of the Workers' Compensation Appeal Board is **VACATED** and this matter is **REMANDED** for further findings and conclusions of law by the Work-

ers' Compensation Judge based on the existing record.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge COLINS.

I dissent. I believe that, as a matter of law, the employer's evidence, even if credited, is too speculative to sustain its burden of proof.

Therefore, I would affirm the Board.

Judges SMITH–RIBNER and FRIEDMAN join in this dissenting opinion.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's conclusion that the proofs offered in this matter, if credited by the Workers' Compensation Judge (WCJ), are sufficient to meet the burden of The Pennsylvania State University/PMA Insurance Group (Employer) to show its entitlement to offset against workers' compensation benefits for pension benefits "to the extent funded by the employer directly liable for the payment of compensation" under Section 204(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a). In my view the method adopted for determining Employer's contribution to the "defined benefit plan" at issue is too speculative, yields results that do not comport with the statutory mandate and unfairly penalizes the affected injured employee. The Workers' Compensation Appeal Board was correct in determining that Employer failed to meet its burden to prove entitlement to a pension offset.

A "defined benefit plan" such as the State Employees' Retirement System (SERS) is one under which no separate account is maintained for any employee

(apart from a record of his or her contributions), but the formula for benefits due at retirement (or disability) is known, and the employee is entitled to receive that benefit for life with the employer making contributions annually as actuarially determined to be necessary to fund its overall obligations. 34 Pa.Code § 123.2. Under a "defined contribution plan," separate accounts are maintained for each employee, and his or her contribution and those of the employer and earnings determine the amount available at retirement. There is no question that deciding the amount by which an employer "funded" a defined benefit plan is much more difficult than deciding for a defined contribution plan, but that does not mean that no attempt to define the amount with some precision should be made.

When an employer claims a right to an offset against workers' compensation liability under the pension offset provision of Section 204(a), SERS calculates such an offset according to a formula, as stated in the testimony of Linda Miller, its Director of Benefits Determination Division, and of Brent Mowery, an actuary and Senior Consultant of the Hay Group, which performs actuarial services for SERS. The only sources of funding are the employee contributions with their earnings and the employer contributions and earnings.

Using a method proposed by the Hay Group, SERS calculates the offset by first determining the overall obligation of the system to an individual when he or she goes on retirement or disability. This figure is derived from the single life annuity (2% × the years of service × the final average salary × the class of service multiplier) times the annuity factor (or life expectancy) to yield the calculated total obligation. See Deposition of Miller, pp. 27–28; R.R. 47a–48a. This amount is discounted to present value using the figure of 8.5%, Deposition of Mowery, p. 38; R.R. 116a, and SERS then subtracts a measure of the accumulated employee contributions and interest thereon over his or her career. What is left is deemed to be the employer's contribution, which is converted to a monthly figure. Id. p. 27; R.R. 105a.

The actual rates of earnings on investment and the rate used for calculation are central to the issue involved in this case. In the 15th Investigation of Actuarial Experience (15th Investigation) submitted to SERS by the Hay Group, covering the period January 1, 1996 through December 31, 2000, Ex. Mowery–2, p. 6; R.R. 165a, it is stated that "an increase in investment earnings will directly reduce the employer contributions needed to pay the benefits." The current economic assumptions as stated in the 15th Investigation include an investment return rate of 8.5%. Id., Table III–1. Table III–2 of the same document, depicting annual rates of growth in investment return both nominal and real and salary growth both nominal and real back to 1981, shows a large range of nominal investment returns over that period with an overall average nominal investment return of 13.2% and an average from 1996 through 2000 of 14.5%. Id., p. 7; R.R. 166a. The 2003 Actuarial Report submitted by the Hay Group to SERS, Ex. Mowery–3, on p. 5; R.R. 202a, includes another table of annual rates of growth from 1984 through 2003, showing a nominal investment return average over that period of 10.9%.

In calculating the pension offset, SERS applies its figure of 8.5% to the employee contributions to determine the total amount of such contributions plus earnings. Mowery testified that 8.5% was in use before the 15th Investigation and it is still used. Thus regardless of what the actual earnings were on the employee's

contributions through his or her career, the employee's credit under the SERS method is based on an assumed rate of earnings of 8.5%. Although Mowery asserted that the method is actuarially sound, he conceded that the actual rate of return probably will not ever be precisely 8.5%. Deposition of Mowery, p. 39; R.R. 117a.

When asked repeatedly why 8.5% was chosen, Mowery stated the actuarial firm considered it to be "appropriate" to measure the employee's share, *id.* p. 38; R.R. 116a. He acknowledged that it is a "temptation" to use a formula such as an average over a five-year period or a twenty-year period rather than a flat rate of 8.5%, but he stated that there was an element of judgment involved by the actuaries and by the parties with fiduciary responsibility to be prudent and mindful of advantages and disadvantages of the rates that they might select for the future. *Id.* p. 40; R.R. 118a. The 15th Investigation stated, p. 7; R.R. 166a: "An 8.5 percent assumption is conservative given the high investment returns during the past 20 years. However, that 20–year period is considered to be one of significantly high investment returns. The low investment return for 2000 may be the beginning of a period of less favorable investment returns."

Mowery never provided any empirical basis for the selection of the figure 8.5% as opposed to 8% or 9% or some other figure. Nevertheless, the rigid application of this figure when the reports issued by the Hay Group show a higher average historical return results in a lower than accurate calculation of the employee contribution toward the overall obligation. A lower estimate of the employee's share means a higher estimate of the employer's share and a consequent higher dollar figure of the offset. Employer is receiving a higher offset than the amount "funded" by Employer, which means that more money is taken from the claimant/retiree's pocket in the present circumstances than should be. This analysis shows violation of the requirement of Section 204(a) of the Act without regard to complications of attempting to calculate Employer contributions either before or after the employee's retirement and to assign them in some way to the individual.

Amicus Commonwealth posits two employees with largely identical histories and careers but with slightly different periods of service, with one period having overall higher returns than the other so that the employer had to make lower contributions to fund the system. It asserts that the offset calculated for them should be the same and that no rational basis exists for disparate treatment. This view illustrates the fallacy of applying a single earnings percentage rate without regard to actual performance. The offset calculation applies to an individual, not to an aggregate. If an individual was fortunate to have served during a period of largely high returns and to have accumulated a high contribution, that fact should not be undercut by artificially low calculations of his or her share intended to compensate for expected periods of lower returns in the future.

SERS has performed a calculation pursuant to its formula that results in an excessively high pension offset to the advantage of Employer and to the disadvantage of the affected employee. Although SERS has attempted to provide more evidence than the showing held to be insufficient in *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343 (Pa.Cmwlth.2005), the method employed still does not calculate an offset that adequately reflects the amount "funded by the employer" as required by

**236** ■ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Section 204(a) of the Act. *See also Pittsburgh Board of Education v. Workers' Compensation Appeal Board (Schulz),* 840 A.2d 1078 (Pa.Cmwlth.2004).

The WCJ found that Mowery admitted on cross-examination that SERS could verify the amount of contributions that Employer made on behalf of employees in a class at the time of contribution and that at times the amount paid by the fund would be less than that originally determined to be the present value of the account. I note the testimony from Linda Miller, Director of the Benefit Determination Division of SERS that Employer made no contributions to the fund in the years 2000 and 2001 and that Employer's contributions have "trended" down during the years 1984 through 2002. The WCJ mentioned that Miller had no records of the amounts contributed by Employer to the fund.

It is clear from this record that the WCJ was correct in concluding that Employer failed to meet its burden of proof and that Employer's proposed method of calculation for its pension offset was neither equitable nor appropriate. The majority has committed fundamental error by endorsing Employer's inherently flawed methodology for determining appropriate offsets pursuant to Section 204(a) and in the process has reached a result that is unfair and unjust and not intended by statutory or case law authority. Rather, it should assist in determining how such offsets may properly be determined, but it has failed to do so. In *King* this Court acknowledged that the purpose of the Act is to benefit injured workers, citing *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Indus.),* 580 Pa. 122, 859 A.2d 1286 (2004). Agreeing with the Board that the employer failed to meet its burden of proof, the Court concluded that the employer is "only entitled to a credit to the

extent it funded the plan...." *King,* 884 A.2d at 348. Because Employer here failed to meet its burden of proof, I therefore dissent.

Judge FRIEDMAN joins.