DEPARTMENT OF PUBLIC
WELFARE/WESTERN
CENTER, Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (CATO),
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2006.

Decided Nov. 17, 2006.

242 ■

Michael B. Dodd, Pittsburgh, for petitioner.

Eric P. Betzner, Washington, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

This case involves a public employer's request for a pension offset against workers' compensation benefits. We are asked to determine whether actuarial opinion of the extent to which an employer funded a defined benefit pension plan is legally sufficient to prove the basis for an offset under Section 204(a) of the Workers' Compensation Act.[1] In an *en banc* case decided today, we determined that, if credible, this proof is legally sufficient. *The Pennsylvania State University/PMA Insurance Group v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225, 2006 WL 3331287 (Pa.Cmwlth., No. 1448 C.D.2005, filed November 17, 2006) (*Penn State*). In accord with *Penn State*, we determine that credible actuarial opinion is competent to prove the basis for an offset in this case; therefore, we reverse the order of the Workers' Compensation Appeal Board (Board).

Alfred Cato (Claimant) sustained a work injury in the nature of a right heel fracture in early July 1999. The Department of Public Welfare/Western Center (Employer) issued a notice of compensation payable accepting liability for Claimant's injury. Claimant returned to work in October 1999 and, consequently, Employer suspended Claimant's benefits. Due to a recurrence of Claimant's injury, Employer reinstated Claimant's benefits in early October 2002. Shortly thereafter, Claimant retired from Employer's service. Upon application, the State Employees' Retirement System (SERS) granted Claimant a disability pension.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71, which provide in part:
   The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensa-* *tion* which are received by an employe[e] shall also be credited against the amount of the award made under sections 108 [occupational disease] and 306 [partial and total disability], except for benefits payable under section 306(c) [specific loss benefits]. (Emphasis added.)

In April 2003, Employer issued a notice of compensation offset under Section 204(a) of the Act and its attendant regulations. *See* 34 Pa.Code §§ 123.4–123.11. Employer's notice indicated a portion of Claimant's workers' compensation award was subject to an ongoing offset due to Claimant's receipt of a disability pension. In response, Claimant filed a petition to review compensation benefit offset.

Before a Workers' Compensation Judge (WCJ), Employer presented the deposition testimony of Linda Miller, SERS' Director of Benefits Determination Division (Director), and Brent Mowrey, SERS' actuary (Actuary). Director testified Employer participates in SERS' defined benefit pension plan, which provides benefits based on a statutory formula and takes into account the employee's years of service, final average salary, and class multiplier. Reproduced Record (R.R.) at 47. Director testified Claimant's contributions to the fund are irrelevant to his pension benefit, and significantly, that Employer does not contribute identifiable sums on behalf of individual employees. R.R. at 55, 61, 68.

Employer asked SERS to calculate the extent to which it funded Claimant's pension benefit for offset purposes. *Id.* at 48. To perform the calculation, SERS uses an actuarial formula. *Id.* at 48–49. The formula subtracts from the total value of the employee's actuarially determined projected lifetime benefit the specific amount the employee contributed, plus an actuarially determined investment rate of return. The resulting figure represents an actuarially accurate portion of further pension benefits which the employee did not fund.[2]

Actuary confirmed Employer and Claimant contributed to the pension fund, and these contributions, together with investment returns, provide the funding source for member pensions. R.R. at 85, 109. Actuary explained the State Employees' Retirement Code (Retirement Code)[3] requires annual actuarial evaluations to determine employer contributions, assets on hand, expected future employee contributions and expected rates of investment returns. *Id.* at 86. While employee contributions are established at certain levels, employer contributions vary annually. *Id.* at 88. Because a defined benefit plan offers a fixed monthly benefit rate, the sponsoring employer bears the risk of investment returns and member longevity, and bears the burden of additional contributions to the extent investment returns do not reach the anticipated level of return. R.R. at 90–91.

Actuary further explained that the reasonable and moderately conservative 8.5% interest SERS attributes to employee contributions was based on economic actuarial

---

**2.** More specifically, Director testified for offset purposes, SERS must first determine the present value of Claimant's pension. To compute present value, SERS calculated Claimant's maximum single life annuity, or monthly benefit ($1,218.51). The maximum single life annuity equals 2% times the member's class of service, times final average salary, times the class multiplier (2% × class of service × final average salary × class multiplier). 71 Pa.C.S. § 5702; R.R. 52. SERS then multiplied the single life annuity by 12, to determine Claimant's yearly benefit ($1,218.51 × 12 = $14,622.12). The yearly benefit is multiplied by the applicable annuity factor, result-

ing in the pension's present value ($14,622.12 × 9.68350 = $141,593.30). R.R. at 50–51.

Thereafter, SERS subtracted Claimant's contributions and investment growth of 8.5% from the present value. The difference represents Employer's funding obligation ($141,593.30 − 43,875.96 = $97,717.34). Employer's obligation, when divided by the same annuity factor, yielded Employer's yearly obligation ($97,717.34 ÷ 9.68350 = $10,091.12). R.R. at 51. On a monthly basis, Employer funds Claimant's pension in the amount of $840.93. *Id.*

**3.** 71 Pa.C.S. §§ 5105–5956.

assumptions. R.R. at 95, 119. On cross-examination, Actuary rejected Claimant's position Employer can calculate its contributions based on the known percentage of payroll contributions and actual investment returns during Claimant's employment period. Actuary testified this calculation would not consider Employer's funding liability after Claimant's retirement (when he no longer contributes to the fund) until his death. *Id.* at 116. Explaining the use of the actuarial formula, Actuary opined that since a defined benefit plan by definition includes actuarial calculations to determine member benefits, funding of the plan must include actuarial calculations to determine its projected liability. *Id.* at 121. In connection with that actuarial valuation, Actuary testified, there must be an assumed future investment return rate utilized to discount future payouts from the fund. *Id.*

Reviewing this testimony, the WCJ the made the following critical findings of fact:

6. Based upon a careful and thorough review of the foregoing record, [C]laimant's review petition is denied. In this regard, it is found that [Employer's] monthly offset is $254.76[ [4] ] based upon [C]laimant's receipt of disability retirement benefits is appropriate. In so holding, I find the unrebutted testimony of [Director] and [Actuary] to be credible and competent. I specifically found [Actuary's] testimony to be persuasive and credible on this issue.

a. The [uncontradicted] testimony of [Director] and [Actuary] establishes that the plan under which [C]laimant receives disability retirement benefits falls within the definition of a defined benefit plan in Section 123.2 of the ... Regulations. Section 123.8(b) of the Regulations provides ... an offset for pension amounts received pursuant to a defined benefit plan. Amounts were not contributed to a pension fund on behalf of [C]laimant as an individual; however, by definition, contributions are not made on behalf of individual employees in a defined benefit plan. In this regard, the testimony of [Actuary] is direct and the distinction noted in Section 123.2 of the regulation between defined benefit and defined contribution plans is noted.

b. The actuarial opinion given by [Actuary] that an 8.5% actuarial assumption rate was appropriate is credited. In this regard, it is noted that the actual statutory rate of return on [C]laimant's retirement contributions was only 4%. The rate of return applied by the Commonwealth therefore results in a higher amount than [C]laimant's contributions and statutory rate of return. Although [Actuary] agreed that the Commonwealth's funding responsibilities could vary based upon market returns, he indicated that this was innate to a defined benefit plan wherein an employee's contributions were fixed and an employe[r] is responsible to ensure that the plan as a whole is adequately funded. In this regard, [Actuary] noted that investment risk is borne by the employer in a defined benefit plan given that investments may not reach assumed levels.

c. [Actuary] testified that the calculations performed by [Director] in arriving at the State funded share of [C]laimant's retirement benefits was proper. Although [Director] worked backwards from a calculation of [C]laimant's share plus the assumed rate of return, [Actuary] explained that it is not possible to directly determine the employer contributed amount in defined benefit plan because payments are not made in relation

---

**4.** This amount actually represents the amount Employer determined Claimant will continue to receive as workers' compensation benefits after offset. Bureau Ex. A–Adm.

to individuals. Furthermore, [Actuary] explained that even if it were possible to more specifically identify funding made on behalf of [C]laimant, this would not necessarily result in an accurate determination as actuarial assumed rates of return in relation to the State's total liability to fund the individual pension were requisite considerations. It is noted that [Actuary's] testimony that the methodology used by [Director] was sound from an actuarial standpoint is completely unrefuted. This is significant given that [C]laimant receives more disability pension funds than [he] would have based upon [his] contributions plus the actual 4% rate of return.

. . . .

9. [E]mployer has established that it is entitled to a pro rata offset based upon its share of [C]laimant's [pension] and has established by the competent and credible testimony of [Actuary] that the calculation of the offset is reasonable and accurate.

WCJ's Op. of 9/21/04, Findings of Fact (F.F.) Nos. 6 and 9 (footnote added). Accordingly, the WCJ denied Claimant's petition to review offset.

On Claimant's appeal, the Board resolved the issue as a matter of law, and reversed the WCJ's order. Relying on *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343 (Pa.Cmwlth.2005), and *Toy v. Workmen's Compensation Appeal Board (Alltel Pennsylvania, Inc.)*, 651 A.2d 701 (Pa.Cmwlth.1994), the Board concluded the record lacked sufficient evidence establishing Employer's funding of Claimant's disability pension. Nevertheless, the Board rejected Claimant's argu-

ment that Employer's unilateral imposition of an offset violated the Act on the ground there was no controlling precedent before *King*.

■ On appeal,[5] Employer raises two issues: whether the Board erred in its interpretation of Section 204(a) of the Act by requiring Employer to prove actual contributions to Claimant's pension despite credible actuarial opinion of the extent to which it funded the pension at issue; and, whether the Board exceeded its scope of review by ignoring the WCJ's credibility determinations. Conversely, Claimant maintains the Board properly applied *King* and rejected Employer's speculative evidence.

This case involves the same issue presented in *Penn State*, whether an employer may offer actuarial opinion of its past and future funding of a defined benefit plan for offset purposes. A review of *Penn State* is therefore helpful.

Factually, *Penn State* is nearly identical. The claimant sustained a work injury and subsequently opted to retire with a disability pension. The public employer filed a petition to modify benefits and afterward issued a notice of workers' compensation benefit offset. Asserting the employer's actions violated the Act, the claimant filed a penalty petition.

Before a WCJ, the employer presented the testimony of Director and Actuary. Although the WCJ acknowledged the employer's evidence may be valid, the WCJ nonetheless determined the law required the employer to prove its actual contributions to the pension fund before offset is permitted. Significantly, the WCJ failed

---

**5.** We are limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Selkow v. Workmen's Comp. Appeal Bd. (Anchor Davis–Jay Box Co.)*, 662 A.2d 31 (Pa.Cmwlth.1995).

to render any credibility determinations. On appeal, the Board affirmed.

On further appeal, we reversed the Board's order. In doing so, we first reviewed the applicable statutory and regulatory language addressing offsets, as well as pertinent statutory provisions of the Retirement Code. Next, we discussed the evidence presented by the employer, which consisted of testimony by the same witnesses presented here, Director and Actuary.

■ Thereafter, we distinguished *King* on a factual basis, which led to the conclusion that the case did not control the outcome. We also rejected the Board's restrictive interpretation of the offset provisions because the interpretation failed to account for core differences between defined benefit and defined contribution plans. We determined that collective funding and the potential for post-retirement funding (future funding) created unique hurdles to proving an employer's defined benefit contribution for offset purposes. Consequently, we concluded funding of a defined benefit pension plan was a subject particularly amenable to expert testimony. Finally, we rejected arguments that such evidence was speculative.

Ultimately, we held the employer's actuarial evidence in *Penn State* was legally sufficient to sustain the employer's burden of proof if credited. Because the WCJ failure to render credibility determinations on the testimony of Director and Actuary, we remanded for further findings on the existing record.

■ In light our holding in *Penn State*, we reverse the Board's order here, which denied Employer an offset. We recognize the Board did not have the benefit of our decision in *Penn State* when addressing the appeal before it. Nevertheless, the Board disregarded the WCJ's credibility determinations in favor of Director and Actuary.

■ It is well settled in workers' compensation proceedings that the WCJ is "the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003). Here, the WCJ specifically credited Director and Actuary's testimony and explained her reasons for doing so. F.F. Nos. 6, 9. Because an employer may sustain its burden of proof for offset purposes through expert actuarial opinion, and the WCJ here found Employer's offer of this evidence credible, Employer is entitled to an offset.[6]

---

6. In *dictum*, the Board also dismissed Claimant's argument the regulations providing for unilateral offsets violate his right to due process. The regulations, the Board noted, afford claimants a mechanism to challenge an offset, thereby providing notice and opportunity to be heard. Bd.'s Order of 11/21/05, at p. 8. Claimant did not appeal, and he does not advance this argument now. Nevertheless, we recognize that due process principles apply to administrative proceedings, and require an opportunity to hear evidence presented by the opposing party, cross-examine witnesses, and introduce evidence on one's own behalf. *Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003 (2006). A party asserting a denial of due process must establish that the statutory procedure for challenging the deprivation does not satisfy the requirements of due process. *Salameh v. Spossey*, 731 A.2d 649 (Pa.Cmwlth.1999).

In this case, Section 123.4 of the regulations identifies the procedure by which an employer may take an offset. 34 Pa.Code § 123.4. It also provides that the affected employee may challenge the offset by filing a petition to review. *Id.* As noted by the Board, Claimant here availed himself of the petition and fully litigated the issue. Employer was required to prove entitlement to offset. This complies with due process. Accordingly, we see no reason to remand this matter to the Board for further consideration of the issue. *Cf. U.S. Airways v. Workers' Comp. Appeal Bd.*

Accordingly, we reverse the Board and reinstate the WCJ's order.

### ORDER

AND NOW, this 17th day of November, 2006, the order of the Workers' Compensation Appeal Board is hereby **REVERSED** and the order of the Workers' Compensation Judge is **REINSTATED.**

(Rumbaugh), 578 Pa. 456, 854 A.2d 411 (2004) (due process requirements met where claimant presented evidence of continued entitlement to benefits during challenge to employer's notice of suspension under Section 413(c) of the Act, added by the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2).