**COMMONWEALTH of Pennsylvania/DEPARTMENT OF PUBLIC WELFARE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HARVEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 19, 2008.

Decided Nov. 26, 2008.

---

J. Brendan O'Brien, Philadelphia, for petitioner.

Marla A. Joseph, Jenkintown, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Public Welfare (Employer) petitions for review of a remand order of the Workers' Compensation Appeal Board (Board). The Board directed the Workers' Compensation Judge (WCJ) to receive additional evidence on the amount of credit Employer could claim against the disability compensation owed to Larry Harvey (Claimant) by reason of Employer's contribution to Claimant's pension from the State Employees' Retirement System. Concluding that the Board's remand order is at odds with this Court's binding precedent, we reverse and reinstate the order of the WCJ.

Claimant suffered a work injury on July 24, 2001, and he began receiving total disability compensation. On June 10, 2005, Employer issued a notice of workers' compensation benefit offset, informing Claimant that Employer was taking a credit against Claimant's disability compensation commensurate with its contribution to Claimant's retirement benefits.[1] Employer asserted a right to both a retroactive and prospective credit in the amount of $1,577.01 per month. On September 1, 2005, Claimant filed a review petition to challenge Employer's offset. Employer filed a timely answer denying the material allegations in Claimant's review petition.

At the hearing, Employer presented the deposition testimony of Linda Miller, Director of the Benefit Determination Section of the State Employees' Retirement System (SERS). As Director, Miller oversees the calculation and payment of retirement, disability, and death benefits owed to members of SERS. Funding for the Commonwealth's defined benefit plan is provided by employee and Employer contributions, as explained by Miller in two depositions. The first deposition took place on October 27, 2005. At the second deposition on June 22, 2006, Miller corrected an error in her first deposition that resulted from SERS' failure to consider Claimant's debt owed to SERS for his purchase of service credit.[2] In that second deposition, Miller explained that Claimant's account was valued by first identifying the annual maximum single life annui-

---

1. Section 204(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* states in relevant part:

    The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation* which are received by an employe *shall also be credited against the amount of the award* made under sections 108 [occupational disease] and 306 [total and partial disability], except for benefits payable under section 306(c) [specific loss benefits]....

    77 P.S. § 71 (emphasis added).

2. Claimant purchased his military service and elected to take a reduction in his monthly retirement amount as the method of payment for this purchase. Including this election in the calculation changed the value of his maximum annual single life annuity which, in turn, changed the offset amount.

ty,[3] subtracting Claimant's debt for his purchase of service credit, and then multiplying the remaining annual annuity amount by a life expectancy factor, which was 9.47370. This resulted in a total pension value of $214,746.42. Claimant's contribution to that total was determined by (1) calculating the sum total of all his contributions and (2) adding to that total an assumed 8.5 percent return on all those contributions. Subtracting Claimant's contributions plus interest from the total pension value produced Employer's contribution, which was determined by Miller to be $19,739.40 annually or $1,644.95 monthly.

Employer also presented the deposition testimony of Brent Mowery, a licensed actuary who does extensive consulting work for SERS. In particular, Mowery annually undertakes an actuarial valuation to determine the funding needs for the Commonwealth's defined benefit plan.[4] He also routinely calculates the Commonwealth's contribution to an individual's annuity where, as in this case, the member is receiving workers' compensation disability benefits in addition to his retirement pension from SERS.[5] The amount Employer

contributes each year on behalf of a particular member fluctuates according to actuarially established funding needs.

With respect to the 8.5 percent assumed rate of return on Claimant's contribution, Mowery explained that it is impossible to specify the exact earnings on a single member's contribution in any given year. In a good year, SERS may realize a return of 15 percent on the funds it manages; in a bad year SERS may realize a negative return on its investments. Mowery testified that the assumed 8.5 percent annual return was reasonable and did not favor either Claimant or the Commonwealth. He explained why the assumed rate of return was preferable to using actual historical rates of return during the years that Claimant was contributing to the system:

Q. . . . Can't we look back in the past during [Claimant's] years of service and come up with what the rate of return was in all of the years that are applicable for the purpose of doing his calculation?

A. Yes, you can identify those rates of return. However, *it is a problem to*

3. The formula SERS used to calculate the maximum single life annuity is defined in the State Employees' Retirement Code as follows: "Standard single life annuity." An annuity equal to 2 of the final average salary, multiplied by the total number of years and fractional part of a year of credited service of a member. 71 Pa.C.S. § 5102. Miller further broke it down as follows: 2 percent times the member's total years of service times the member's final average salary times the class of service multiplier. Deposition of Linda Miller, 6/22/06, at 15 (Miller Depo. ____); Reproduced Record at 243a (R.R. ____).

4. A defined benefit plan is defined at 34 Pa. Code § 123.2: Defined-benefits plan—A pension plan in which the benefit level is established at the commencement of the plan and actuarial calculations determine the varying contri-

butions necessary to fund the benefit at an employes retirement.

5. The Bureau of Workers' Compensation has promulgated regulations regarding the offset of workers' compensation benefits where an injured employee also receives pension benefits. *See* 34 Pa.Code §§ 123.1–123.11. Mowery explained that the formula required working backwards from the estimated amounts of pension benefits claimant will receive in his lifetime. Then, an 8.5 percent assumed rate of annual return on investments is applied to the amount that claimant contributed to arrive at claimant's share. Employer's share is determined by subtracting claimant's share from the total value of claimant's pension fund. A spreadsheet was developed based on the formula to facilitate calculations in each specific case.

*take into account actual levels of investment return in the determination of the benefits under the defined benefit pension plan where the benefit is not and should not be a function of the results of investments of assets underlying the plan,* and it goes back to that same princi[p]le that I had discussed before that the defined benefit pension plan design is one under which [Employer] bears the full risk of investment of assets and [Claimant] is essentially insulated. [Claimant's] benefits will not vary upward or downward as a result of the actual investment experience of the plan.

Deposition of Brent Mowery, 6/1/06, at 118–119; R.R. 118a–119a (emphasis added).

Mowery also testified that he reviewed Miller's calculation of the amount of Claimant's offset. Noting that Claimant had elected to pay for his purchase of military time by having his annuity payment reduced until the debt was extinguished, Mowery advised Miller to revise her calculations. When she did so, the amount of the credit to which Employer was entitled was established at $1,644.95 per month.

Claimant presented no evidence in support of his review petition. He presented no evidence in opposition to Employer's case.

The WCJ denied Claimant relief. The WCJ credited the unrefuted testimony of Miller and Mowery and concluded that the assumed 8.5 percent return on Claimant's contributions was appropriate. He explained this conclusion as follows:

> Based upon a careful and thorough review of the foregoing record, Claimant's Review Petition is denied.... In so holding, this adjudicator finds the unrefuted testimony of Ms. Miller and Mr. Mowery to be credible and competent. In *Pennsylvania State University v.*

*WCAB (Hensal),* 911 A.2d 225 (Pa. Cmwlth.2006), the Court noted that defined benefit plans are a subject particularly amenable to expert testimony. It is therefore significant that Claimant presented no expert evidence to rebut the testimony of [Employer's] actuary. In addition, the following are specifically found;

a. The uncontradicted testimony of Ms. Miller and Mr. Mowery establishes that the plan under which Claimant receives disability retirement benefits falls within the definition of a defined benefit plan in Section 123.2 of the Bureau Regulations.... Although amounts were not contributed to a pension fund on behalf of the Claimant as an individual, by definition contributions are not made on behalf of individual employees in a defined benefit plan. In this regard, the testimony of Mr. Mowery and Ms. Miller is credited and the distinction noted in Section 123.2 of the regulation between defined benefits and defined contribution plans is noted.

b. The actuarial opinion given b[y] Mr. Mowery that an 8.5% actuarial assumption rate was appropriate is credited. In this regard, *it is noted that the actual statutory rate of return on Claimant's retirement contributions was only 4%. The rate of return applied by [Employer] therefore results in a higher amount* than [Employer's] funding responsibilities could vary based upon market returns, he indicated that this was innate to a defined benefit plan wherein an employees contributions were fixed and an employe[r] is responsible to ensure that the plan as a whole is adequately funded. In this regard, Mr. Mowery noted that the investment risk is borne by [Employer] in a defined ben-

efit plan given that investments may not [r]each assumed levels.

c.... It is noted that Mr. Mowery's testimony that the methodology used by Ms. Miller was sound from an actuarial standpoint is completely unrefuted. This is significant given that Claimant receives more disability pension funds tha[n] he would have based upon his contributions plus the actual 4% rate of return.

WCJ Decision at 4–5, Finding of Fact No. 6; R.R. 282a–83a (emphasis added).

Claimant appealed to the Board, and it remanded the matter to the WCJ. The Board found a remand was warranted because the WCJ's five findings of fact were insufficient.[6] The Board held that:

The [WCJ] failed to make "critical" findings of fact listed by the court in *Cato* and failed to make any credibility determinations concerning those witnesses.

Board Opinion at 6; R.R. 291a. The Board also concluded that Employer should not have used an assumed rate of annual return to calculate Claimant's contribution to his annuity. Accordingly, the Board remanded, stating:

The matter is REMANDED for the [WCJ] to reopen the record for the submission of additional evidence as is necessary to determine the extent of [Employer's] funding of Claimant's pension, *including evidence concerning the actual present value of Claimant's pension fund contributions based on the historical rates of return of the SERS pension fund,* and for the [WCJ] to make necessary credibility determinations, findings of fact, and conclusions of law consistent with the foregoing Opinion.

Board Opinion at 10; R.R. 295a (emphasis added). Employer petitioned for this Court's review of the Board's remand order.

■ On appeal,[7] Employer contends that the Board exceeded its scope of review. First, Employer argues that the Board erred because it ignored the WCJ's credibility determinations. Second, Employer contends that the Board's directive that the WCJ determine Claimant's contribution on the basis of SERS' year-by-year rate of return would have the WCJ find so-called "critical facts" that lack any legal significance. Indeed, a hearing to determine those facts would violate this Court's binding precedent. In response, Claimant contends that Employer's appeal should be quashed because the Board's remand order is interlocutory.

■ We turn, first, to the question of whether the Board's remand order is appealable.[8] Employer contends that the

---

6. The Board stated that there were five findings of fact. There were six. The sixth finding of fact detailed the WCJ's credibility determinations, as set forth above.

7. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Melmark Home v. Workers' Compensation Appeal Board (Rosenberg),* 946 A.2d 159, 161 n. 3 (Pa.Cmwlth. 2008).

8. Section 763(a) of the Judicial Code, 42 Pa. C.S. § 763(a), provides that this Court has jurisdiction to hear appeals from final orders of Commonwealth agencies. Pennsylvania Rule of Appellate Procedure 341(a) provides the general rule for appeals from the "final order" of an administrative agency. Rule 341 defines a final order as one that:

(1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule [dealing with determination of finality by the governmental unit].

PA. R.A.P. 341(b).

Board's remand order is appealable as of right under Pennsylvania Rule of Appellate Procedure 311(f)(2).

■ The Board's remand order is interlocutory, and as such, generally not appealable. *Peterson v. Workers' Compensation Appeal Board (Wal Mart & CMI, Inc.),* 938 A.2d 512, 515 (Pa.Cmwlth.2007) (holding that a remand order of the Board is interlocutory and unappealable). However, as we further observed in *Peterson,* the Pennsylvania Rules of Appellate Procedure authorize the appeal of an interlocutory order in two circumstances. Rule 311(f) states:

(1) an order of a ... government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that *does not require the exercise of administrative discretion;* or

(2) an order of a ... government unit remanding a matter to an administrative agency or hearing officer that decides an issue which *would ultimately evade appellate review if an immediate appeal is not allowed.*

Pᴀ. R.A.P. 311(f) (emphasis added). Employer contends that the Board's remand order is appealable as of right under Rule 311(f)(2), arguing that if the WCJ makes new findings on the amount of Claimant's contribution to his pension, then his original decision will become moot and evade review. Further, Employer will be required to attend an unnecessary and illegal hearing.

In *Lewis v. School District of Philadelphia,* 690 A.2d 814 (Pa.Cmwlth.1997), this Court considered a trial court's remand order directing the school district's board to conduct a hearing on Lewis' dismissal from his employment. The school district and board asserted that the plaintiff was not entitled to any hearing other than the one that had already been conducted by a hearing officer and on the basis of which the board would issue its adjudication. If the board were required to conduct another, and illegal, hearing, then the school district's appeal seeking relief from that hearing would become moot. This Court agreed and granted the school district an appeal under Rule 311(f)(2). To hold otherwise would have deprived the school district and the board the relief they sought, *i.e.,* being excused from the second hearing.

The present case is analogous to *Lewis.* Claimant argues that if the WCJ renders a different decision on remand, then Employer can appeal that decision. However, in that case, Employer would be forced into a hearing for what Employer contends is an improper purpose. Employer argues that binding precedent has already approved the use of an assumed 8.5 rate of return to calculate the amount of a workers' compensation claimant's contribution to his SERS pension. It violates decisional law to take evidence on another methodology, as ordered by the Board. As in *Lewis,* Employer will lose the relief sought in its petition for review, *i.e.,* being excused from a completely improper hearing. We agree and hold that the Board's remand order in this case is appealable as of right under Rule 311(f)(2).

We turn, then, to the merits of Employer's appeal. Employer contends that the Board erred in ignoring the WCJ's credibility determinations and in holding that the WCJ failed to make critical findings of fact. We agree.

■ It goes without saying that the "WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 574 Pa. 61, 76, 828 A.2d 1043, 1052

(2003). It is also the case that the Board has the authority to remand a matter to the WCJ to take of additional evidence where the WCJ's findings are not supported by substantial evidence or where the WCJ fails to make findings on a crucial issue for a proper application of the law. Section 419 of the Act, added by Section 6 of the Act of June 26, 1919, P.L. 642, *as amended,* 77 P.S. § 852;[9] *Reinert v. Workers' Compensation Appeal Board (Stroh Companies),* 816 A.2d 403, 407 (Pa. Cmwlth.2003). In this case, however, neither basis for a remand can be found.

First, the WCJ did make credibility determinations. He expressly credited Miller and Mowery and detailed the reasons for so doing. WCJ Decision at 4–5; R.R. 282a–83a.

■ Second, there are no missing "critical" findings of fact, as asserted by the Board. To have the WCJ determine the amount of Claimant's pension fund contributions by establishing the rates of return of the SERS pension fund for each year of Claimant's contribution would send the WCJ on a meaningless mission. Indeed, it would violate this Court's prior holdings on this point.

■ The legal sufficiency of an actuarially assumed rate of annual return has been decided by this Court in *Department of Public Welfare/Western Center v. Workers' Compensation Appeal Board (Cato),* 911 A.2d 241, 246 (Pa.Cmwlth.2006) and *Pennsylvania State University v. Work-*

ers' Compensation Appeal Board (Hensal), 911 A.2d 225, 232 (Pa.Cmwlth.2006). In *Cato,* this Court followed its decision in *Hensal* to hold that the Commonwealth can use an expert actuarial opinion to establish its contribution to an employee's retirement annuity. Miller and Mowery testified for Employer regarding the Commonwealth's contribution to the claimant's pension amount in *Cato,* and as the WCJ noted in the present case,

> the evidence presented by [Employer] in the instant matter is virtually identical to the *evidence upheld by the* Commonwealth Court in *DPW v. WCAB (Cato),* 911 A.2d 241 (Pa.Cmwlth.2006), *as sufficient to establish a pension offset.*

WCJ Decision at 5; R.R. 283a (emphasis added).[10] In *Hensal,* Miller and Mowery similarly used the 8.5 percent investment return rate to calculate the amount of the claimant's contribution to his SERS pension. This Court held that

> [s]ince an employer cannot provide evidence of actual contributions for the use of an individual member of a defined benefit pension plan, it may meet its burden of proof, as Employer attempted to in this case, with expert actuarial testimony. Employer's expert evidence here, *if accepted as credible, is legally sufficient* to establish the extent to which Employer funded Claimant's defined benefit pension for purposes of offset.

911 A.2d at 232. In sum, this Court already decided that the expert evidence

---

9. Section 419 provides that

[t]he board may remand any case involving any question of fact arising under any appeal to a referee to hear evidence and report to the board the testimony taken before him or such testimony and findings of fact thereon as the board may order. The department may refer any question of fact arising out of any petition assigned to a referee, to any other referee to hear evi-

dence, and report the testimony so taken thereon to the original referee.

77 P.S. § 852.

10. The Board also held that the WCJ failed to make "critical" findings of fact as required by this Court in *Cato.* However, since the WCJ's findings in the present case are virtually identical to the WCJ's findings in *Cato,* the Board's conclusion is without merit.

presented in *Hensal* and *Cato* was legally sufficient; therefore, the legal sufficiency of identical evidence in the present appeal is governed by controlling precedent. The Board erred in remanding the matter to the WCJ for the submission of additional evidence on the actual rate of return on Claimant's contributions.

Finally, we note that the WCJ's Order states that "[Employer] is entitled to a monthly offset of $1,995.52 based upon the retirement benefits received by Claimant." WCJ Decision at 5; R.R. 283a. This amount is a typographical error; $1,995.52 is the amount of Claimant's monthly pension before it was reduced by Claimant's debt for his purchase of his military service. In Finding of Fact No. 5, the WCJ found that "the revised calculation of $1,644.95 offset was correct from an actuarial standpoint." WCJ Decision at 3; R.R. 281a.[11] It is clear that the reference to "$1,995.52" in the WCJ's order was a typographical error and should be corrected to read "$1,644.95."

Accordingly, we reverse the Board and reinstate the WCJ's order as modified by this opinion.

### ORDER

AND NOW, this 26th day of November, 2008, the order of the Workers' Compensa-

tion Appeal Board, dated April 4, 2008, is hereby REVERSED and the order of the Workers' Compensation Judge, dated April 13, 2007, is REINSTATED and MODIFIED to read as follows:

> AND NOW, this 4th day of April, 2007, the Claimant's Review Petition is DENIED and DISMISSED. Defendant is entitled to a monthly offset of $1,644.95 based upon the retirement benefits received by Claimant.

CONCURRING OPINION BY Senior Judge McCLOSKEY.

I concur with the result reached by the majority in this case because I believe the present law proclaims actuarial testimony is sufficient to carry the employer's burden when seeking an offset, but I write separately to set forth my view that if the actual rate of return can be determined for each year that an employee worked, as acknowledged by the actuary in this case, then the actual rate, rather than an assumed rate, should be used in calculating an offset.

---

11. Miller testified that the correct offset amount was $1,644.95. *See Miller Depo.* at 11, 32; R.R. 239a; R.R. 260a. In Finding of Fact No. 6, the WCJ credited Miller's testimony.