**SCHOOL DISTRICT OF PHILADELPHIA,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (DAVIS),**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Dec. 22, 2011.

Max Kimbrough, Paoli, for petitioner.

Michael G. Dryden, Philadelphia, for respondent Carol Davis.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner School District of Philadelphia (Employer), petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a decision of a workers' compensation judge (WCJ), which denied Employer's petition to review compensation benefit offset (review offset petition) relating to the workers' compensation benefits Employer pays to Carol Davis (Claimant). We now reverse the Board's order and remand the matter to the Board.

Claimant sustained a work-related injury on September 9, 2003, and thereafter began to receive workers' compensation

benefits. On December 24, 2007, Employer filed its review offset petition, asserting that based upon Claimant's retirement from employment on February 7, 2004, Employer was entitled to an offset of benefits reflecting Claimant's receipt of pension benefits. Claimant responded to that petition by denying Employer's claim of entitlement to offset Claimant's benefits.[1]

The WCJ conducted a hearing on November 3, 2008, during which Employer submitted the deposition testimony of Janet Cranna, a consulting actuary who provides actuarial services to the Pennsylvania School Employees Retirement System (PSERS), which administers the pension fund (the Fund) for employees such as Claimant. Ms. Cranna's testimony focused on the amount of money Employer contributed toward Claimant's pension and the formula and calculations she used to arrive at that figure. This is critical information in determining the amount, if any, of the set-off in workers' compensation benefits to which an employer may be entitled. Employer also submitted the deposition testimony of Christine M. Mumma, who works for PSERS as a retirement administrator and who provided testimony of a similar nature to Ms. Cranna's. The WCJ determined the testimony of both of these witnesses to be credible in part. The WCJ determined that Ms. Cranna's and Ms. Mumma's testimony was not "persuasive or credible as to the Employer's contribution to the pension plan for calculation of the pension offset." (Finding of Fact (F.F.) 16.)

The WCJ based the negative credibility determinations on their responses to questions on cross-examination, regarding interest accruing on contributions to the Fund made by non-vesting employees. Claimant's counsel noted during the course of his cross-examination of Ms. Cranna that when such employees terminate their service, those employees receive their contributions plus a four (4) percent statutorily mandated return on their contributions. Ms. Cranna acknowledged that any return on such employees' contributions above the four (4) percent statutory return remains, in a comingled manner, in the Fund. The WCJ determined that "Ms. Cranna's testimony that no effort was made to isolate the portion of [the Fund] funded by investment growth on the contributions of non-vested Employee[s], compels rejection of her conclusion that the formula used by PSERS accurately establishes Employer's contribution for offset." (Finding of Fact No. 16.) In summary, with regard to the testimony of Ms. Cranna and Ms. Mumma, the WCJ essentially deemed the testimony insufficient to carry Employer's burden, because the testimony did not quantify the value or amount of the return on investment that may be retained in the Fund after non-vesting employees are paid their contributions plus the four-percent statutory rate of return upon their termination (Retained Investment Returns), if any. (F.F. No. 16.) The WCJ determined that consideration of Retained Investment Returns potentially reduces the calculation of an Employer's contribution to the Fund. (F.F. No. 17.) Based upon these determinations and conclusions, the WCJ denied Employer's benefit offset petition. The Board affirmed the WCJ's decision.

On appeal,[2] Employer raises a single issue for our review: whether the Board

1. In early January 2008, Claimant filed two "review offset benefit" petitions and a penalty petition. Employer also filed a modification petition based upon the relief it requested in its offset benefit petition. Ultimately, the WCJ denied Claimant's offset benefit petitions as moot, denied her penalty petition, and denied Employer's modification petition, based upon his decision in Employer's offset benefit petition.

2. Our standard of review in a workers' compensation appeal is limited to determining

erred in affirming the WCJ's decision because the WCJ accepted as credible the testimony of Employer's witnesses that Employer funded some portion of Claimant's pension benefits, thus entitling Employer to some offset of compensation benefits. The key statutory provision at issue in a pension offset matter is Section 204(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 71, which provides as follows:

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employee shall also be credited against the amount of the award made under section[ ] 306.

In *The Pennsylvania State University/The PMA Insurance Group v. Workers' Compensation Appeal Board*, 911 A.2d 225 (Pa.Cmwlth.2006) (*Hensal*), appeal denied, 593 Pa. 743, 929 A.2d 1163 (2007), this Court identified the purposes of Section 204(a) to include the reduction of "the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings," and the implicit policy that an injured employee should not be required to fund an employer's workers' compensation responsibility through her own retirement pension. *Hensal*, 911 A.2d at 227–28. Under 34 Pa.Code § 123.8(a), an employer is entitled to an offset for money a claimant receives from a defined benefit or defined contribution plan to the extent the pension is funded by the employer directly liable for payment of workers' compensation benefits. An employer bears the burden of demonstrating the "extent" to which it has funded an employee-claimant's pension. *Hensal.*

In *Hensal*, the Court examined the difficulty an employer faces in demonstrating the extent to which it funds an employee's pension when the pension at issue is paid pursuant to a "defined benefit plan." [3] The Court noted that defined benefit pension plans, such as the one at issue in this case, are "designed to provide an employee with a set benefit amount based on factors known only at retirement, such as length of employment and retirement age . . . membership class and final average salary." *Id.* at 231. "[A]n employee's actual contributions do not determine the amount of monthly benefits a member will receive." *Id.* Defined benefit plans require employers to contribute such amounts to "cover the difference" between "employee contributions and the collective pension [fund] liability." *Id.* The Court stated that, "[b]ecause the pension guarantees a fixed benefit level [to an employee], *the employer assumes the risks of investment, inadequate funding, and member longevity.*" *Id.* (emphasis added). The beneficial pooling aspect of such plans, which helps spread the risk of funding a pension plan

---

whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

3. A "defined benefit plan" is one in which the benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at the time of retirement. 34 Pa.Code § 123.2.

over many factors, also places hurdles before an employer who bears the cost of paying a pension to an individual to whom it also continues to be responsible for workers' compensation benefits.

Based upon these observations, the Court in *Hensal* concluded that "the extent to which an employer funded a particular employee's defined benefit pension *can only be determined by an actuarial formula.*" *Id.* at 232 (emphasis added.) Thus, the Court held that "[s]ince an employer *cannot provide evidence of actual contributions for the use of an individual member* of a defined benefit pension plan, it may meet its burden of proof ... with expert actuarial testimony." *Id.* (emphasis added). The Court rejected the argument of the claimant that such expert testimony would be "impermissibly speculative," citing instances in which courts have accepted expert testimony to establish lost future earning capacity. *Id.*

At issue in this case is the question of whether the isolated admissions of Ms. Cranna concerning the rate of return on the fund for the 2003/2004 fiscal year and the June 30, 2007 investment return of 22.9 percent, upon which the WCJ relied in reaching his decision, are relevant under Section 204(a) of the Act and the decisions of this Court and our Supreme Court which have interpreted that provision. Here, the Board affirmed the WCJ, noting that "when read in their entirety, the WCJ's Findings indicate that he rejected [Employer]'s actuarial evidence because he believed, due to the inclusion of the excess investment growth income, [the inclusion of such income] overstated [Employer]'s contribution to the pension plan." (Board Decision at 8.)

We note initially that there is no definitive evidence that Retained Investment Returns affected the contribution Employer made to the Fund as a whole for the period the Fund has been in existence. As the testimony of Employer's actuarial expert, Janet Cranna, reveals, the general method by which she determined the amount to which Employer funded the plan, with regard to Claimant, involves the following process. First, Ms. Cranna identified the total value of Claimant's pension, which is also referred to as the "transfer value." [4] (Reproduced Record (R.R.) at 24a.) Ms. Cranna confirmed that the first reduction she made from that figure is the Claimant's own contributions to the Fund, and that figure is multiplied by a statutorily-assumed investment growth of 8.5 percent. (Reproduced Record (R.R.) at 24a–25a.) Ms. Cranna deducted that sum from the transfer value of Claimant's pension. (R.R. at 25a.) Ms. Cranna then testified that the remaining amount reflects contributions from Employer and the Commonwealth. (*Id.*) Thereafter Ms. Cranna employed a two-step process to determine Employer's contribution to the pension. (*Id.*) First, Ms. Cranna divided the remaining net sum by two, because the Commonwealth and Employer contribute equally to the Fund. In this case, she arrived at a figure of $144,032.94. (*Id.*) Because Claimant did not work for more than one employer, Ms. Cranna determined the percentage of Employer's share in reference to transfer value (by dividing the transfer value of $383,646.56 by Employer's share of $144,032.94), which is 37.5 percent of the transfer value. (R.R. at 25a–26a.) Thus, Ms. Cranna testified that Employer funded or funds 37.5 of Claimant's pension benefit. (*Id.*) Ms. Cranna multiplied Claimant's monthly pension benefit by that percentage, which resulted in a determination that Employer funds $989.81 of Claim-

**4.** Factors such as mortality tables, annual payments, and a retiree's elections as to type of annuity are pertinent in determining the transfer value of a retiree's pension.

ant's monthly pension benefit. (R.R. at 27a.) Ms. Cranna testified that, because workers' compensation benefits are paid on the basis of weekly benefit calculations, she divided the monthly contribution by 4.34 (the average number of weeks in a month) to determine the weekly offset amount. (*Id.*)

On *cross-examination*, counsel for Claimant asked Ms. Cranna about contributions made to the Fund by persons who do not vest, but rather terminate employment and who must then withdraw their actual contributions. (R.R. at 35a–43a.) As noted above, such persons are entitled by law to a four (4) percent return on the amount of their contributions regardless of the actual rate of return. Counsel asked Ms. Cranna what happens to any return on those contributions over and above the four percent that non-vesting employees receive upon termination of employment. Ms. Cranna testified that such sums remain in the Fund. Ms. Cranna testified that some years there could be returns below four (4) percent or even negative growth. Ms. Cranna specifically testified that the actuarial method employed for determining pension funding is "inherent—that's really taken into account when we do our actuarial valuations because that in itself determines how we determine what the employer contribution rate is." (R.R. at 41a.) We note that, during the course of the cross-examination of Ms. Cranna, counsel for Claimant engaged in more than simple questioning of Ms. Cranna. Rather than simply posing questions to the witness, counsel for Claimant provided commentary regarding his perspective of the impact of Retained Investment Returns. For example, counsel for Claimant made the following statement: "Okay, having seen it done, I know that it's possible to figure out how much money came from investment growth of nonvested employees, you'll agree with me?" (R.R. at

42a.) We must emphasize that such comments do not constitute evidence.

Ms. Cranna admitted that generally the Fund would expect to see growth greater than four percent, but that there were some years where the growth would be below that figure and perhaps even reflect negative growth, which would produce a loss to the Fund. (R.R. at 40a.) Such losses could ultimately require employers and the Commonwealth to provide additional moneys to the Fund. Ms. Cranna, while acknowledging that she might be able to ascertain in the aggregate the amount in the Fund attributable to growth income from non-vesting former employees, if she had data indicating the numbers of non-vesting employees and amounts of growth income for particular years, stated that *she believed that the formulas employed already reflected a recognition of the impact of Retained Investment Returns remaining in the fund upon the termination of non-vesting employees.* (R.R. at 41a.)

The point of counsel's questioning and comments during his colloquy with Ms. Cranna was that actuaries should subtract from the transfer value of a pension any Retained Investment Returns in order to determine the precise amount of contributions an employer makes to an employee's pension. In other words, under Claimant's view, which the WCJ and Board accepted, based upon the colloquy and *hypothetical* questions Claimant's counsel posed to Ms. Cranna on cross-examination, an employer who funds a claimant's pension through a defined benefit system and seeks to obtain an offset bears the burden to prove not only a prima facie case relating to the extent to which an employer has funded a claimant's pension, but it also must demonstrate that any other potential source of income for a pension fund has been excluded from the employer's offset. With this

perspective in mind, we consider the merits of Employer's appeal regarding its right to an offset under Section 204(a) of the Act.

In *Department of Public Welfare v. Workers' Compensation Appeal Board (Harvey)*, 605 Pa. 636, 993 A.2d 270 (2010), our Supreme Court engaged in a statutory construction analysis of Section 204(a) of the Act, and opined that actuarial assessment represented the most reasonable approach to quantifying employer funding pertaining to individual defined-benefit pensions. In support of the claimant's contention that the actuarial method was improper for determining the extent of an employer's funding of a claimant's pension, an amicus raised the same issue that is the subject of this appeal and which involved the same actuarial formula that Ms. Cranna applied in this case. *Harvey*, 605 Pa. at 647, 993 A.2d at 277. Further, as stated by our Supreme Court, the amicus contended that "a statutory rate of four percent interest is applied to benefit withdrawals; however, the actuarial evidence incorporates the assumed return rate of 8.5 percent. According to amicus, the difference is not rightfully attributable to employer funding, yet, it is credited to employers under the exclusion-based methodology for offset calculation." *Id.* at 647–48, 993 A.2d at 277.

The Supreme Court summarized the employer's and amicus' responses to the claimant's arguments as follows:

Employer and its amici explain that such returns are not one of the three material sources of SERS funding (employer contributions, employee contributions, and investment returns) identified in the unrefuted evidence presented at the hearing before the WCJ. Moreover, Employer observes that the actuarial consultant, deemed credible by the WCJ, was aware of the use of the four percent statutory rate of interest pertaining to benefits withdrawals; nonetheless, he opined that the offset and underlying methodology were appropriate within a reasonable degree of actuarial certainty. Furthermore, amicus PSU criticizes the effort to insert additional fact-based contentions into the arguments at the appellate stage. Ultimately it is Employer's position that the possibility of other nominal sources of funding already has been considered in the overall actuarial assessment and goes at most to the weight, rather than the legal sufficiency, of its expert evidence.

*Id.,* at 652, 993 A.2d at 280.

Interestingly, while the Supreme Court did not specifically address these arguments, the court focused on the reliance by the employer's experts on a foundation premised on prediction rather than certainty:

Employer's expert testimony was internally consistent, and the factual basis was provided, inter alia, in the form of investigations and reports performed by [the State Employees Retirement System (SERS)]'s actuarial consultant. While the actuarial evidence contains an inherent predictive element, the arguments of Employer and its amici amply develop that such predictions are a staple of the discipline and a core component of defined-benefit pension-system valuation. This Court recognizes the practical necessity of expert opinion testimony in matters well beyond lay experience, and we hold that actuarial assumptions and calculations may form the basis for a reasoned determination of the employer-funded component of a defined-benefit pension.

Accordingly, as the Commonwealth Court held, the WCJ properly credited the consultant's testimony that the na-

ture of a defined-benefit plan impedes direct tracing and quantification of employer funding, and that actuarial science offers a rational alternative consistent with the nature of this type of plan. *Accord City of Phila. v. W.C.A.B. (Grevy)*, 968 A.2d 830, 839 (Pa.Cmwlth.2009) (explaining that, "[i]f the actuarial testimony is accepted as credible, it is legally sufficient to establish the extent of an employer's funding for offset/credit purposes"). Similarly, acceptance of the calculation methodology—entailing crediting the employee's past contributions, coupled with an actuarially justified rate of return over Claimant's projected life expectancy and attribution of the balance of each pension payment to Employer's past, present, and future contributions—was within the prerogative of the WCJ. Moreover, the WCAB was not free to deviate from the existing Commonwealth Court precedent, either in terms of the deferential review required relative to credibility determination or the ability of Employer to satisfy its burden using expert testimony.

Finally, we acknowledge Claimant's concern with burden shifting, but, at least as a practical matter some burden of going forward with contrary evidence generally ensues after the party bearing the initial burden puts forward a credible prima facie case. We also realize that borderline interpretations are construed in favor of injured parties in the workers' compensation setting. Nevertheless, we do not regard the present interpretation as a borderline one.

*Id.* at 655–56, 993 A.2d at 282–83 (certain internal citations omitted).

The approach the WCJ took in this case appears to overlook the fact that a primary goal of Section 204(a) of the Act, and the actuarial methods the Supreme Court has approved, are designed not only to ensure that a claimant does not fund his own workers' compensation benefits, but also that an employer should not have to pay a Claimant, in essence, "double" compensation for his work-related injuries. The actuarial formula the Supreme Court accepted in *Harvey* seeks to arrive at the proper result by excluding other *material* and identifiable sources of fund contributors by determining actual contributions from those sources. Investment return income arising from those identifiable sources may lead to reductions in payment by an employer, but when the return on the Fund's investments is below four percent, or negative, an employer, not an employee, must bear the cost of such losses by increasing its contributions. The formula, as indicated in *Harvey*, also recognizes the imprecision inherent in the analysis.

Employer argues that the Board erred in affirming the WCJ's decision. Employer, while acknowledging the WCJ's prerogative to determine the credibility of witnesses, asserts that the WCJ erred because he veered from the essence of the controlling decisional law by rejecting actuarial testimony he deemed to be credible (and which comports with the above-noted judicial decision holding that an employer need not offer proof of *exact* contributions) in favor of the view that an employer *must* demonstrate *exact* amounts of its contribution to a pension fund. Employer asserts that its burden is to demonstrate how much it contributed to a fund. This requirement, Employer urges, means that it must show the extent to which it funded the pension, but it does not mean that an employer must offer proof of actual contributions. Thus, Employer, referring the Court to this Court's decision in *Department of Public Welfare v. Harvey*, 960 A.2d 957 (Pa.Cmwlth.2008), notes that we rejected Harvey's claim that a "WCJ must determine the amount of [a] claimant's

pension fund contribution by establishing the rates of return of the SERS pension fund for each year of [a] claimant's contribution." (Employer's brief at 17.) In essence then, it appears that Employer is arguing that the WCJ's approach requires proof of a similar, if not identical, character to the information that this Court deemed unnecessary and impracticable in *Harvey*, a view with which the Supreme Court ultimately agreed.

Employer asserts that the WCJ's rejection of its witnesses' testimony results in a practical rejection of this Court's decisions holding that actuarial proof of the extent of employer funding, rather than proof of actual contributions, is sufficient. The WCJ appears not to have rejected Employer's witnesses' testimony, but rather to have rejected their ultimate conclusions on the basis that the witnesses "could not establish what *amount* the Employer contributed to Claimant's pension that would result in an accurate calculation of the offset." (Employer's brief at 18, quoting WCJ's Finding of Fact No. 17.) Employer points out that the WCJ rejected the experts' testimony because of "imprecision" in calculating the amount of value of the pension benefit offset, but that lack of precision was precisely what this Court accepted as tolerable in *Hensal*.

Further, Employer points out that the courts have accepted the identical methodology used in this case, and that the WCJ's and Board's reliance upon the WCJ's province to make credibility determinations "drives a truck through this loophole." (Employer's brief at 20.) Employer also argues that, even if the Court disagrees with its earlier arguments, the WCJ, having found part of the witnesses' testimony credible, was obliged to render a factual finding that Employer established that it funded the pension fund to *some* extent, and thus, Employer is entitled to a remand for the WCJ to make such a determination.

We agree with Employer that the WCJ and Board erred in rejecting Employer's claim for an offset on the basis of Employer's witnesses' statements on cross-examination. First, we observe that the basis for the WCJ's rejection of the opinions of witnesses whose testimony the WCJ otherwise credited was based on questioning by Claimant's counsel on cross-examination that was significantly hypothetical. Because counsel did not lay any foundational basis in support of his suggested criticism of Ms. Cranna's actuarial methods set forth in her direct examination, we fail to see how the WCJ could find her responses to counsel's questions material to the ultimate issue of whether Employer demonstrated the extent of its funding of the pension. In fact, Ms. Cranna, like the expert whose testimony was the subject of our Supreme Court's decision in *Harvey*, similarly indicated that excesses (and implicitly deficiencies) over and below the four (4) percent statutory rate of return to non-vesting employees is a factor reflected in the formula the Supreme Court approved in *Harvey*. Thus, we conclude that the WCJ erred in basing his conclusion that Employer failed to satisfy its burden to prove its contribution to Claimant's pension on Ms. Cranna's testimony that returns above four percent remain in the Fund.

Moreover, we believe that this factor is precisely one of the elements to which our Supreme Court in *Harvey* alluded when it observed that claimants, "at least as a practical matter," may bear "some burden of going forward with contrary evidence . . . after the party bearing the initial burden puts forward a credible prima facie case." *Id.* at 655–56, 993 A.2d at 282–83. In this case, Employer established a prima facie case, and if Claimant desired to chal-

lenge the prima facie case, Claimant was required to offer her own evidence demonstrating the materiality and relevance of her assertion that retention in the Fund of investment returns of non-vesting employees impacted the extent to which Employer contributed to Claimant's pension.

As a final observation, we note that Claimant argues that the WCJ was correct and that Employer seeks to benefit by taking a credit for money contributed by its employees. Actually, Employer in this situation is not taking credit for money employees contributed, but rather for money earned from contributions of employees, and that happens regardless of whether an employee is vested or not vested when they terminate their employment. Accordingly, we reverse the Board's order affirming the decision of the WCJ, and we remand the matter to the Board with the direction to remand the case to the WCJ to issue an order directing Employer to take an appropriate offset based upon the credited actuarial evidence provided by Employer.

### ORDER

AND NOW, this 22nd day of December, 2011, the order of the Workers' Compensation Appeal Board is REVERSED and REMANDED.

### DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

As noted by the Majority, it is Employer's burden to prove its entitlement to a pension benefit offset under Section 204(a) of the Workers' Compensation Act (Act)[1] and Section 123.8 of the Department's regulations[2] by demonstrating the extent to which it has funded Claimant's pension.

*The Pennsylvania State University/The PMA Insurance Group v. Workers' Compensation Appeal Board (Hensal),* 911 A.2d 225 (Pa.Cmwlth.2006), *petition for allowance of appeal denied,* 593 Pa. 743, 929 A.2d 1163 (2007). In order to meet this burden of proof, Employer, as the burdened party, had to meet both its burden of production and its burden of persuasion. *See, e.g., Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer),* 710 A.2d 1256, 1261 n. 16 (Pa.Cmwlth.1998) ("The 'burden of proof' actually includes two different burdens: the burden of production where the burdened party must produce enough evidence to avoid an adverse legal ruling, and the burden of persuasion, where the burdened party 'must convince the fact finder to the required degree of certainty of the party's position on that issue.'") (citation omitted).

Ms. Cranna's and Ms. Mumma's testimony confirm that the offset calculation method used by Employer does not account for money in the pension fund due to investment growth on contributions made by employees that did not vest in the plan. Thus, although Employer isolated the portion of Claimant's pension that was funded by Claimant, the Commonwealth, and Employer, the calculation method used by Employer fails to isolate the portion of Claimant's pension that comes from this other source, i.e., investment growth on contributions by non-vested employees. Employer's failure to isolate this contribution source, and to remove it from the amount purportedly contributed by Employer, prevented Employer from credibly establishing the offset as required by the Act and the regulations to the WCJ's satisfaction.

In addition, *Department of Public Welfare v. Workers' Compensation Appeal*

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71.

2. 34 Pa.Code § 123.8.

*Board (Harvey),* 605 Pa. 636, 993 A.2d 270 (2010) and *Hensal* in no way alter the WCJ's role as the arbiter of credibility.[3] Since Employer is not permitted to take credit for contributions made by other sources, *see Harvey* and *Hensal,* Employer did not credibly establish the portion of Claimant's pension that it had funded, and the WCJ properly acted within his authority to find that Employer had failed to meet its burden of proof with credible evidence. As a result, the Board did not err in affirming the WCJ's decision.

Accordingly, unlike the Majority, I would affirm the Board's order in this case.

---

3. The WCJ is the ultimate finder of fact in workers' compensation proceedings. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.),* 83 Pa. Cmwlth. 451, 479 A.2d 631 (1984). As the fact finder, the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991). In fact, the WCJ may reject the testimony of any witness even if it is uncontradicted. *Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter Company),* 724 A.2d 407 (Pa.Cmwlth.1999). Thus, questions of credibility and the resolution of conflicting testimony are within the exclusive province of the fact finder. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board (Jakel),* 31 Pa.Cmwlth. 590, 377 A.2d 1007 (1977). As a result, determinations as to witness credibility and evidentiary weight are within the exclusive province of the WCJ and are not subject to appellate review. *Hayden.*